UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SEATON KREYER AND DARLENE BRISKIE, individually and as the biological parents of N.K. and L.K., minor children, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:25-CV-586-TAV-DCP |
| ASHLEY JACKSON, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil matter is before the Court on defendants' motion to dismiss [Doc. 15]. Plaintiffs have responded in opposition [Doc. 23], defendants have replied [Doc. 25], and plaintiffs have filed a sur-reply [Doc. 31]. Accordingly, this matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court will **GRANT** the motion to dismiss [Doc. 15], and this civil action will be **DISMISSED**. Defendants' motion to stay discovery [Doc. 29] is accordingly **DENIED as moot.**

## I. Background

Plaintiffs' claims against defendants arise from the arrest of Seaton Kreyer, minor plaintiffs' biological father, for a domestic disturbance on November 2, 2024 [Doc. 1 ¶ 12]. Following Kreyer's arrest, the Department of Children's Services ("DCS") received a referral alleging child abuse, and Ashley Jackson, a case manager/investigator at DCS, initiated an investigation on November 6, 2024 [*Id.* ¶¶ 5, 13]. Following Jackson's investigation, DCS filed an *ex parte* petition for a restraining order on November 7, 2024

[*Id.* ¶ 13; Doc. 15-1, p. 11]. The juvenile court granted the petition on the same day and, *inter alia*, ordered Kreyer removed from the home and restricted his contact with minor plaintiffs N.K and L.K. [Doc. 15-1, pp. 22–23]. On November 15, 2024, the juvenile court ordered that Kreyer could have strictly supervised contact with the children and that Darlene Briskie, their biological mother, could not be present for Kreyer's visitation [*Id.* at 27–28].

On November 27, 2024, Kreyer and Briskie filed a notice of removal, removing the juvenile court case to this Court [Doc. 1 ¶ 18; *see also* 3:24-cv-477, Doc. 1]. On December 2, 2024, Jackson and guardian *ad litem* Jessica White made an unannounced visit to plaintiffs' home, where they discovered Kreyer was present [Doc. 1 ¶ 19]. On December 3, 2024, White filed an emergency motion for contempt in the juvenile court [Doc. 15-1, p. 36], to which Kreyer and Briskie responded, asserting a good faith understanding that removing the case divested the juvenile court of jurisdiction and stayed enforcement of the court's existing order [*Id.* at 40]. Jackson and Emily Mullins, a DCS attorney, also filed a petition for adjudication of dependency and neglect, *ex parte* protective custody order, and temporary legal custody on December 3, 2024 [Doc. 1 ¶ 20]. The same day, the juvenile court found probable cause that the minor plaintiffs were dependent and neglected, removed the children from the custody of Briskie, and awarded DCS temporary legal custody [*Id.*; Doc. 15-1, pp. 54–56].

On December 4, 2024, DCS attorney Claudia Robinson filed a notice of suspension of jurisdiction informing the juvenile court that Kreyer and Briskie's removal of the case forced DCS to return custody of the children to Briskie [Doc. 15-1, p. 60]. Attorney Robinson also noted DCS's intent to resume litigation upon remand [*Id.*]. This Court

remanded the case later that day [*Id.* at 63], and the juvenile court entered a subsequent order awarding DCS temporary custody [*Id.* at 68].

On December 20, 2024, the juvenile court found probable cause that the children were dependent and neglected due to domestic violence and violations of prior court orders [*Id.* at 7]. Then, on March 12, 2025, the juvenile court found by clear and convincing evidence that the children were dependent and neglected based on Briskie's failure to protect the children and inability to provide appropriate care and supervision, as well as Kreyer's alcohol abuse and exposure of the children to domestic violence [*Id.* at 3]. Kreyer and Briskie filed an appeal and, following a Knox County Circuit Court trial on July 23, 2025, Kreyer and Briskie were awarded physical custody of the children [Doc. 1 ¶ 21]. On October 7, 2025, the children were returned to the legal custody of Kreyer and Briskie [*Id.*].

On December 3, 2025, plaintiffs filed this action against defendants Jackson, Mullins, White,[1] Leslie Works, Sandra Jones, and Heather Schaad, individually[2] [Doc. 1]. Plaintiffs assert four claims against defendants, each actionable under 42 U.S.C. § 1983: (i) a violation of plaintiffs' rights to procedural due process under the Fourteenth Amendment, (ii) a violation of plaintiffs' rights to substantive due process under the Fourteenth Amendment, (iii) a violation of plaintiffs' rights to family integrity under the

---

[1] Although initially named as a defendant in this matter, all claims against Jessica White were dismissed without prejudice on August 31, 2026, upon plaintiffs' failure to effect service of process [Doc. 37].

[2] Defendant Works is a case manager/investigator at DCS, and Jones and Schaad are case managers/supervisors [Doc. 1 ¶¶ 8–10].

First Amendment,[3] and (iv) a violation of plaintiffs' rights to be free from retaliation under the Fourteenth Amendment [*Id.* ¶¶ 24–28].

## II. Standard of Review

Defendants have brought their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

[3] As discussed *infra*, the Court finds that this claim is better analyzed as a Fourteenth Amendment due process claim.

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## III. Analysis

### A. Matters Outside the Pleadings

Defendants contend that the Court may consider the exhibits attached to defendants' motion to dismiss because they are "referenced in the Complaint, are central to the Plaintiffs' claims, and are court records that are subject to judicial notice" [Doc. 15, p. 4].

Plaintiffs respond that "pleadings, orders and the like are not considered evidence" [Doc. 23, p. 7]. Plaintiffs further assert that the accuracy of such documents "can always be questioned . . . especially . . . when the pleadings and orders are not issued simultaneously with the subject event, or are drafted subsequently" [*Id.*]. Lastly, plaintiffs dispute the factual findings of the pleadings attached to defendants' motion to dismiss and suggest that the Court should thus not consider them [*See id.*].



Case 3:25-cv-00586-TAV-DCP Document 38 Filed 09/04/26 Page 5 of 22 PageID #: 549

"Generally, courts may consider only the factual allegations in the pleadings when deciding a Rule 12(b)(6) motion to dismiss." *Tebault v. United States*, 778 F. Supp. 3d 912, 917 (W.D. Ky. 2025) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). However, the Sixth Circuit has held that "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss *so long as they are referred to in the Complaint and are central to the claims contained therein.*" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).

Additionally, "'[a] federal court may take judicial notice of the proceedings in other courts of record." *Lucaj v. Dedvukaj*, 13 F. Supp. 3d 753, 756 n.4 (E.D. Mich. 2014) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980)). The Federal Rules of Evidence state that "[t]he court may take judicial notice [of adjudicative facts] on its own." Fed. R. Evid. 201(c)(1). Specifically, a court may take judicial notice of public records when ruling on a motion to dismiss. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").

Here, the exhibits attached to defendants' motion to dismiss [Doc. 15-1][4] are referred to in the complaint and are central to the claims therein. Specifically, plaintiffs' complaint repeatedly references the juvenile court proceedings underlying this action, and each of

---

[4] The Court does not find it necessary to consider Doc. 15-2 in ruling on defendants' motion to dismiss.

plaintiffs' claims are premised on the alleged conduct of defendants surrounding those proceedings [*See* Doc. 1 ¶¶ 13–28]. Furthermore, the ten exhibits that are court records contain adjudicative facts from the juvenile court proceedings. Thus, the Court finds it appropriate to consider the exhibits attached to defendants' motion to dismiss in the context of this Rule 12(b)(6) motion without converting the motion to one for summary judgment. *See Bassett*, 528 F.3d at 430; *Rodic*, 615 F.2d at 738.

### B. Absolute Immunity

Defendants assert absolute prosecutorial immunity for all claims arising from the initiation of any juvenile court action, specifically the filing of the petitions for a restraining order and dependency and neglect [Doc. 15, p. 8].

Plaintiffs respond that defendants failed to act appropriately in initiating proceedings and functioning in roles associated with those proceedings and are thus not entitled to absolute immunity [Doc. 23, p. 9]. Specifically, plaintiffs contend that removal of the case divested the juvenile court of any jurisdiction and defendants were therefore also barred from taking any action related to the case between the date of removal, November 27, 2024, and the date of remand, December 4, 2024 [*Id.* at 5]. Plaintiffs also assert that absolute immunity is inapplicable where jurisdiction is lacking [Doc. 31, p. 2].

"[S]ocial workers are absolutely immune only when they are acting in their capacity as *legal advocates*—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." *Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (emphasis in original) (quoting *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 724 (6th

Cir. 2011)). "Social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity." *Id.* (citation omitted); *see also Pittman*, 640 F.3d at 724–25 (noting that family service workers are "absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings") (citation omitted). Courts determine immunity using a "functional approach," and "prosecutorial immunity applies 'so long as the general nature of the action in question is part of the normal duties of a prosecutor,' even when that immunity 'bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor.'" *Pittman*, 640 F.3d at 725 (quoting *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009)). Furthermore, the rule providing that social workers are not entitled to absolute immunity for investigative acts has been "interpreted . . . quite narrowly in practice." *Turner v. Lowen*, 823 F. App'x 311, 317 (6th Cir. 2020).

Tennessee juvenile courts are vested with authority to make child custodial determinations. *See* Tenn. Code Ann. § 37-1-117. In making recommendations to the juvenile court, DCS workers act "in an advisory role." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir. 2001) (citation omitted). When acting in this advisory role, DCS workers "act in much the same fashion as probation officers who make sentencing recommendations to criminal courts for which they are entitled to absolute immunity." *Id.* (citations omitted). Because "[t]he function of making such recommendations, *including the underlying investigation*, is similarly intimately related to the judicial phase of the child custody proceedings[,] [s]ocial workers involved in the investigation or recommendation

are, therefore, entitled to absolute immunity with respect to claims arising from such recommendations and investigations." *Id.* at 422–23 (emphasis added); *see also Pittman*, 640 F.3d at 726 (finding social worker absolutely immune from claim that her allegedly false assertions to the court arose from "an inadequate investigation").

Although it is not entirely clear which specific actions of each defendant relate to each of plaintiffs' claims, the Court finds that defendants are absolutely immune for filing the petition for *ex parte* restraining order [Doc. 15-1, pp. 12–21] and the petition for adjudication of dependency and neglect, *ex parte* protective custody, and temporary legal custody [*Id.* at 46–53]. Similarly, "[a]ny statements given under oath . . . or at subsequent court proceedings" related to those petitions "are shielded by absolute immunity." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (citation omitted). Lastly, defendants are absolutely immune from claims arising from their acts of investigation and recommendation. *See Rippy*, 270 F.3d at 422–23; *Pittman*, 640 F.3d at 726.

The Court need not determine whether defendants' filing of the dependency-and-neglect petition during the period of removal and remand constituted improper conduct because prosecutorial immunity would nevertheless apply. *Pittman*, 640 F.3d at 725 (quoting *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009)); *see also Turner v. Lowen*, 823 F. App'x 311, 317 (6th Cir. 2020) ("The scope of immunity enjoyed by social workers is remarkably broad."). Plaintiffs' sole supporting citation regarding the forfeiture of absolute immunity in the absence of jurisdiction is inapplicable here [Doc. 31, pp. 2–3 (citing *Mireles v. Waco*, 502 U.S. 9, 12 (1991))]. *Mireles* addresses only absolute *judicial* immunity. Even if the Court found *Mireles* instructive as to the instant case, plaintiffs'

argument would nevertheless fail in light of the functional approach courts use in evaluating immunity. *See Mireles*, 502 U.S. at 13 ("[I]t is 'the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis.'") (citation omitted). When defendants were investigating, filing petitions, and providing any related testimony under oath, they were "acting in their capacity as *legal advocates*," and are thus entitled to absolute immunity. *Kovacic*, 724 F.3d at 694 (emphasis in original).

Accordingly, defendants' motion to dismiss on absolute immunity grounds is **GRANTED**, and to the extent that plaintiffs' due process or First Amendment claims are premised on the conduct discussed above, such claims will be dismissed on these grounds.

### C. Qualified Immunity

Defendants also assert the defense of qualified immunity as to each of plaintiffs' claims [Doc. 15, pp. 6–8]. As it relates to plaintiffs' Fourteenth Amendment due process and First Amendment claims, defendants argue that the juvenile court, and not any of the named defendants, ordered the restrictions and ultimate removal of minor plaintiffs [*Id.* at 11, 14–15, 18–19]. As it relates to plaintiffs' Fourteenth Amendment retaliation claims, defendants argue that they did not violate a "clearly established" right [*Id.* at 23–24].

Plaintiffs respond that defendants are responsible for violations of plaintiffs' due process and First Amendment rights because defendants provided the allegations and basis that led to the juvenile court proceedings [Doc. 23, p. 12]. Plaintiffs also argue that "long-existing precedent plainly warns individuals in the Defendants' position <u>not</u> to proceed further in state court" following the removal of a state court case to federal court [*Id.*].

Ultimately, plaintiffs argue that defendants' liability arises from their failure to follow "established federal law" [*Id.*].

In "constru[ing] the complaint in a light most favorable to plaintiffs," the Court's determination of defendants' absolute immunity for some actions does not resolve all of plaintiffs' claims. *Bishop*, 520 F.3d at 519. "If the challenged actions of the prosecutor were not performed in his role as advocate, if they do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings, then only qualified immunity applies." *Cady*, 574 F.3d at 340 (quoting *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006)).

Where warranted, the doctrine of qualified immunity shields a government official from suit under § 1983 "insofar as *their* conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (emphasis added). "Under the familiar test for qualified immunity, a public official is immune from suit unless the plaintiff establishes: (1) a constitutional violation; and (2) that the right at issue was 'clearly established' when the event occurred." *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (citation omitted); *see also Pearson*, 555 U.S. at 231. "If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages." *Gordon*, 20 F.4th at 1082 (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). *Pearson* also held that "judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236.

### 1. Fourteenth Amendment Procedural Due Process Claims

Defendants first argue that each of plaintiffs' claims arises from defendant Jackson's initial investigation, which led to the juvenile court's orders of restricted contact between Kreyer and minor plaintiffs, as well as minor plaintiffs' subsequent removal [Doc. 15, p. 8]. Defendants thus assert that, to the extent that plaintiffs suffered violations of their Fourteenth Amendment procedural due process rights, any such violations were committed by the juvenile court [*Id.* at 10–12].

Plaintiffs respond that defendants are not entitled to qualified immunity [Doc. 23, p. 8]. Specifically, plaintiffs argue that defendants, and not the juvenile court, are responsible for any due process violations because defendants "provided the allegations and basis for seeking the removal" as well as "the requisite citations in the record and the forms submitted" [*Id.* at 12].

A plaintiff alleging a violation of procedural due process rights "must show '(1) that [he] was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law.'" *Pittman*, 640 F.3d at 729 (citations omitted). "[W]hen a State seeks to terminate [a protected] interest . . ., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Id.* (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)).

Tennessee juvenile courts have authority, prior to a hearing, to remove a child from the custody of a parent upon a probable cause belief that such child is "neglected, dependent or abused" and "subject to an immediate threat to the child's health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm." Tenn. Code

Ann. § 37-1-114(a)(2). If the juvenile court's decision to remove a child under these circumstances is based on an *ex parte* petition, "a preliminary hearing shall be held no later than seventy-two (72) hours after the child's removal to determine whether such child's continued removal is required." *Id.* § 37-1-117(b)(1). Thus, it is the presiding court's "duty to notify the appropriate parties to a custody hearing." *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013); *see also* Tenn. Code Ann. § 37-1-117(b)(3). "When an aggrieved parent sues county caseworkers for their conduct during child custody proceedings culminating in the deprivation of custody by the juvenile court . . . responsibility for procedural deficiencies lies with the juvenile court, not the caseworkers." *Arsan v. Keller*, 784 F. App'x 900, 911 (6th Cir. 2019) (citing *Pittman*, 640 F.3d at 730).

In the instant case, the Court's "inquiry begins, and ends, with an analysis of whether [defendants'] actions violated a constitutionally protected right." *Pittman*, 640 F.3d at 727. Assuming without deciding that plaintiffs' procedural due process rights were violated at any point throughout the juvenile court proceedings that resulted in minor plaintiffs' removal, any deficiencies are attributable to the juvenile court, not defendants. *See Arsan*, 784 F. App'x at 911. Thus, plaintiffs cannot show that any named defendant is responsible for the alleged deprivation, and defendants are entitled to qualified immunity. *See Pittman*, 640 F.3d at 727–28.

Because the Court concludes that defendants did not violate plaintiffs' alleged rights, it is unnecessary to reach the merits of the parties' procedural due process arguments for purposes of ruling on the motion to dismiss. *See Pearson*, 555 U.S. at 236 (holding that

district courts may address either prong of qualified immunity first). Indeed, where one qualified immunity prong is dispositive, opining on the other prong would "depart[] from the general rule of constitutional avoidance." *Id.* at 241.

Accordingly, defendants' motion to dismiss as to the procedural due process claims is **GRANTED**.

### 2. Kreyer and Briskie's Fourteenth Amendment Substantive Due Process Claims

As to Kreyer and Briskie's substantive due process claims, the parties raise the same arguments as they do with respect to procedural due process. Defendants argue that these claims should be dismissed because, to the extent that plaintiffs' substantive due process rights were violated, the juvenile court is the responsible entity [Doc. 15, p. 11].

Plaintiffs respond that, because defendants provided the allegations and basis for the juvenile court's actions, the defendants are therefore liable for the alleged violations [Doc. 23, p. 12].

As discussed above, Tennessee juvenile courts have authority under state law to remove children from the custody of their parents. Tenn. Code Ann. §§ 37-1-114(a)(2), 37-1-117(b)(1). That juvenile courts are vested with the authority to make custodial determinations renders social workers, like defendants, "merely [parties] to the . . . proceedings, tasked with presenting to the juvenile court [their] recommendation as to the appropriate course of action." *Kolley*, 725 F.3d at 586 (quoting *Pittman*, 640 F.3d at 729). Further, because Tennessee juvenile courts hold "the ultimate decision-making power

with respect to placement and custody," the juvenile court "alone [can] deprive [plaintiffs] of [their] fundamental right" to substantive due process. *Id.*

Here, the juvenile court ordered that Kreyer could have strictly supervised contact with the minor plaintiffs and that Briskie could not be the supervisor or otherwise be present for such visitation [Doc. 15-1, pp. 22–23]. Additionally, it was the juvenile court that found probable cause that the children were dependent and neglected, removed the children, and awarded DCS temporary legal custody [Doc. 1 ¶ 20; *see also* Doc. 15-1, pp. 46–53]. Thus, the juvenile court, with its "ultimate decision-making power" regarding custodial proceedings, imposed the restrictions and ordered the removal of the children upon which Kreyer and Briskie premise their substantive due process claims. *Kolley*, 725 F.3d at 586. Therefore, to the extent that plaintiffs' constitutional rights to substantive due process were violated, the juvenile court was the responsible entity. In light of the absolute immunity discussion above, the Court finds this to be true despite any actions by defendants that led to the juvenile court proceedings. *See Pittman*, 640 F.3d at 726; *Turner*, 823 F. App'x at 317.

As with the procedural due process claims, the Court finds prong one of the qualified immunity analysis dispositive as to Kreyer and Briskie's substantive due process claims. Thus, the Court need not address the merits of the parties' arguments. *See Pearson*, 555 U.S. at 236 (holding that district courts may address either prong of qualified immunity first); *id.* at 241 (holding that, where one qualified immunity prong is dispositive, opining on the other prong would "depart[] from the general rule of constitutional avoidance").

Accordingly, defendants' motion to dismiss as to Kreyer and Briskie's substantive due process claims is **GRANTED**.

### 3. First Amendment Claims

Defendants assert that plaintiffs' claims regarding the right to familial association arise under the Due Process Clause of the Fourteenth Amendment rather than the First Amendment [Doc. 15, p. 17]. Defendants further assert that, as with the procedural and substantive due process claims, any violations of plaintiffs' alleged rights were committed by the juvenile court [*Id.* at 18–19]. Specifically, defendants state that the juvenile court ordered the restrictions that plaintiffs allege infringed on their right to familial association [*Id.*].

Plaintiffs again respond that any violations are traceable to defendants because they provided the allegations and basis that led to the removal [Doc. 23, p. 12].

"[I]ntimate association claims, such as the right to family association, are generally raised under the Due Process Clause of the Fourteenth Amendment." *Kolley*, 725 F.3d at 587 (citing *Anderson v. LaVergne*, 371 F.3d 879, 882–82 (6th Cir. 2004)). Conversely, "freedom of expressive association claims—right to assembly, speech, petition for the redress of grievances, and the exercise of religion—are protected by the First Amendment." *Id.* Because "[f]amily association is a form of intimate association . . . the argument is better considered as a Due Process claim." *Id.* (internal citation omitted).

The Court's findings as to plaintiffs' substantive due process claims apply here as well. As discussed *supra*, the juvenile court imposed all restrictions limiting Kreyer's contact with the children and ordered the removal of the minor plaintiffs from the custody

of Kreyer and Briskie. Thus, assuming without deciding that plaintiffs suffered a deprivation of the fundamental right to family association, such deprivation was committed by the juvenile court, not by defendants. Because Tennessee juvenile courts are the ultimate decisionmakers regarding custodial matters, Tenn. Code Ann. §§ 37-1-114(a)(2); 37-1-117(b)(1), any violation of plaintiffs' rights "lies with the court and not with the defendants," who are thus entitled to qualified immunity. *Kolley*, 725 F.3d at 587. Having dismissed the First Amendment claims on these grounds, the Court need not assess defendants' further arguments as to the merits of plaintiffs' constitutional arguments. *See Pearson*, 555 U.S. at 236, 241.

Accordingly, defendants' motion to dismiss as to the First Amendment claims is **GRANTED**.

**4. Retaliation Claim**

Defendants argue that they are entitled to qualified immunity as it relates to plaintiffs' claim of retaliation under the Fourteenth Amendment because they did not violate a "clearly established" right [Doc. 15, pp. 23–24].

Plaintiffs respond that clearly established federal law required defendants to cease all action related to plaintiffs' juvenile court case once the case was removed to this Court [Doc. 23, p. 14]. Additionally, plaintiffs argue that they have a "federal constitutional right not to be retaliated against for petitioning any court" [*Id.*], which they allege was violated when defendants "arrang[ed] and secur[ed] the *ex parte* removal" of minor plaintiffs from the custody of their biological parents following the notice of removal [Doc. 1 ¶ 27].

In support of their "clearly established" argument, plaintiffs contend that the juvenile court "*and any person* associating his or herself" with the juvenile court were to "cease any proceedings against Plaintiffs 'unless and until the case is remanded'" [*Id.* at 13 (quoting 28 U.S.C. § 1446(d))] (emphasis added). Plaintiffs also provide as supporting citations *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57, 63–64 (2020) and *Kern v. Huidekoper*, 103 U.S. 485, 493 (1881) [Doc. 23, p. 13]. In response to defendants' assertion that plaintiffs failed to identify "clearly established" law, plaintiffs seemingly concede that the retaliation claim presents "somewhat of a novel issue that has not previously been litigated in a published opinion" [Doc. 31, p. 1]. Plaintiffs maintain, however, that the notice of suspension of jurisdiction filed by DCS attorney Robinson proves that defendants knew they had no authority to "take any action involving the Plaintiffs during the pendency of the removal proceedings" [Doc. 23, p. 9; *see also* Doc. 31, p. 2].

For the right at issue to be "clearly established, existing precedent" at the time of the alleged constitutional violation, binding precedent "must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "Specificity is critical; we cannot 'define clearly established law at too high a level of generality.'" *Tarter v. Metro. Nash. Airport Auth.*, No. 22-5421, 2023 WL 5322418, at *5 (6th Cir. Aug. 18, 2023) (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)). To

overcome qualified immunity, a plaintiff must either identify a case that put the officer on "fair notice that her conduct was unlawful" or show that this is an "obvious case" where the prevailing standards "'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 198–99 (citations omitted).

In other words, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Failure to identify "a decision that 'squarely governs' this [case] is particularly detrimental to plaintiff's claim because . . . [q]ualified immunity exists to give public officials breathing room" in the exercise of their official discretion. *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 488 (6th Cir. 2017) (quoting *Brosseau*, 543 U.S. at 201) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

The Court first repeats its finding that defendants are absolutely immune for filing the petitions that led to the removal of the children, as well as for their actions in the underlying investigation. The Court thus turns to defendants' investigation of plaintiffs following Kreyer and Briskie's filing of the notice of removal. Although 28 U.S.C. § 1446(d) provides that, following removal, "the State court shall proceed no further unless and until the case is remanded," the statute does not address whether parties involved in the proceedings must do the same. Plaintiffs' remaining citations similarly fail to demonstrate "clearly established" law that would place defendants on notice that their conduct was unconstitutional. Plaintiffs' cited cases establish that a state court's loss of jurisdiction following removal renders the court's "subsequent proceedings and judgment . . . absolutely void." *Acevedo Feliciano*, 589 U.S. at 63–64; *Kern*, 103 U.S. at 493. Neither case,

however, addresses the validity of the state court's previous rulings. More importantly, neither case addresses whether a notice of removal has any effect on social workers' authority to continue a pending investigation.

Here, the absence of any citation to case law that clearly establishes the right of plaintiffs to be free from defendants' continued investigation is fatal to plaintiffs' claims of retaliation. *See Brousseau*, 543 U.S. at 198. Plaintiffs seeking to overcome qualified immunity must affirmatively demonstrate that the right at issue was "clearly established." *See Rivas-Villegas*, 595 U.S. at 5. Even when "constru[ing] the complaint in a light most favorable to plaintiffs" and "accept[ing] all well-pled factual allegations as true," plaintiffs have not shown how they could be entitled to relief in the face of defendants' invocation of qualified immunity. *Bishop*, 520 F.3d at 519.

Accordingly, defendants' motion to dismiss [Doc. 15] as to the Fourteenth Amendment claim of retaliation is **GRANTED**.

### D. Minor Plaintiffs' Substantive Due Process Claims

Defendants argue that, to the extent that minor plaintiffs assert a violation of their Fourteenth Amendment substantive due process rights based on their removal, such claims should be dismissed because they should have been brought under the Fourth Amendment instead [Doc. 15, p. 13].

In response, plaintiffs assert only that "an Amended Complaint could have clearly rebutted" defendants' argument [Doc. 23, p. 1 n.2]. Plaintiffs do, however, confirm that "both due process claims Plaintiffs make are for the removal of the minor Plaintiffs on December 3, 2024" [*Id.* at 11].

In determining liability under 42 U.S.C. § 1983, it is first "necessary to isolate the precise constitutional violation with which [defendants are] charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Where "an explicit textual source of constitutional protection" exists, "a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Turner*, 823 F. App'x at 319 (citation omitted). Thus, "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against [unreasonable seizures], that Amendment . . . must be the guide for analyzing these claims." *Id.* at 319–20 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). By "fail[ing] to identify a right, privilege or immunity secured by the Constitution that was violated," a plaintiff fails to state a claim upon which relief can be granted. *Codd v. Brown*, 949 F.2d 879, 882 (6th Cir. 1991).

Here, minor plaintiffs seemingly allege that their removal from the custody of Kreyer and Briskie constituted an improper seizure [*See* Doc. 1 ¶¶ 24–26; Doc. 23, pp. 10–11]. Thus, the Court must evaluate plaintiffs' claims under the constitutional provision that expressly protects against such conduct, the Fourth Amendment. *See Turner*, 823 F. App'x at 319–20. Plaintiffs do not, however, in any of their pleadings, identify the Fourth Amendment as providing the right that they allege was violated. Plaintiffs have therefore failed to state a claim upon which relief can be granted, and dismissal is warranted. *See Codd*, 949 F.2d at 882.

Accordingly, defendants' motion to dismiss [Doc. 15] is **GRANTED** as to minor plaintiffs' substantive due process claims. Given that all of plaintiffs' claims have been dismissed, this case will be dismissed in its entirety.

## VI. Conclusion

For the reasons above, defendants' motion to stay discovery [Doc. 29] is **DENIED as moot**, their motion to dismiss [Doc. 15] is **GRANTED**, and this case will be **DISMISSED**. An appropriate order will enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE